## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW M MEXICO

**CAROLINE BROWN,**

       **Plaintiff,**

    **vs.**                               **Civ. No. 12-579 ACT**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Motion to Reverse or Remand for a

Rehearing With Supporting Memorandum ("Motion") of the Plaintiff Michelle Armijo

("Plaintiff"), filed January 25, 2013 [Doc. 18].  The Commissioner of Social Security

("Defendant") filed a Response on March 28, 2013 [Doc. No. 19], and Plaintiff filed a Reply on

April 10, 2013 [Doc. No. 20].  Having considered the Motion, the memoranda submitted by the

parties, the administrative record and the applicable law, the Court finds that Plaintiff's Motion

is not well taken and will be **DENIED**.

## I.  PROCEDURAL RECORD

    On October 24, 2008, Plaintiff protectively filed an application for Social Security

Disability Insurance Benefits ("DIB") under Title  II of the Social Security Act, 42 U.S.C. §§

401.[1]  [Tr. 128, 172.] Plaintiff was insured for benefits through December 31, 2012, and must

show that she became disabled on or before that date. [Tr. 172.]  Plaintiff alleges a disability

---

[1]  On June 7, 2013, Plaintiff filed a Notice of Grant of Subsequent Application, notifying the Court that
Plaintiff's subsequent applications for Social Security were granted in December 2012 and Plaintiff was declared
disabled beginning August 1, 2011. [Doc. 22.]

beginning January 15, 2008, due to problems with her knees, left hip, left wrist, and right shoulder. [Tr. 176.]  Plaintiff's application was initially denied on March 5, 2009, and denied again at the reconsideration level on July 31, 2009.  [Tr.  82, 88.]

The ALJ conducted a hearing on May 17, 2010. [Tr. 35-63.]  At the hearing, Plaintiff was represented by Attorney Michelle Baca.[2]  On December 22, 2010, the ALJ issued an unfavorable decision.  In her report, the ALJ found that since January 15, 2008, the Plaintiff had the following severe impairments: tricompartmental osteoarthrosis of the bilateral knees, chronic right shoulder pain, and obesity. [Tr. 21.] The ALJ also found that Plaintiff had non-severe impairments of left hip pain, left wrist pain, asthma, hearing problems, glaucoma, and mental impairments of depression, anxiety, and panic attacks. [Tr. 21.]  However, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 24.]  The ALJ also found that since January 15, 2008, Plaintiff had the residual functional capacity to perform light work as follows:

- The ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently;

- The ability to sit for six hours out of an eight-hour workday and 30 minutes at one time;

- The ability to stand and/or walk for six hours out of an eight-hour workday and 30 minutes at one time;

- The ability to push and pull with the upper and lower extremities in a manner consistent with the strength limitations set forth above;

- The ability to balance and stoop frequently;

---

[2]  Plaintiff is currently represented by Attorney Michael Armstrong.

2

- The ability to climb ropes, ladders, and scaffolds and ramps and stairs, kneel, crouch, and crawl occasionally;

- The ability to reach overhead frequently with the dominant upper extremity;

- The ability to perform work requiring the ability to understand a normal volume of speech in a quiet room; and

- The need to avoid concentrated exposure to extreme cold and temperature extremes and the need to avoid concentrated exposure to respiratory irritants.

[Tr. 25.]  The ALJ concluded that Plaintiff is unable to perform any past relevant work, but considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. [Tr. 29.]

On April 4, 2012, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. [Tr. 7.] On May 29, 2012, the Plaintiff filed her Complaint for judicial review of the ALJ's decision. [Doc. 1.]

Plaintiff was born on November 1, 1958. [Tr. 38.]  The Plaintiff completed her GED in 1992 and has past work experience as a certified nursing assistant and janitor.  [Tr. 39, 177, 181.] The Plaintiff has not engaged in any substantial gainful activity since her alleged onset date of January 15, 2008. [Tr. 176.]

## II.  STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

3

other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). In

order to qualify for disability insurance benefits, a claimant must establish a severe physical or

mental impairment expected to result in death or last for a continuous period of twelve months,

which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C.

§423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §

404.1520.[3]

     Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and

second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208,

1214 (10th Cir. 2004) (quotation omitted). Substantial evidence is such evidence as a reasonable

mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the

record taken as a whole, and the court will "meticulously examine the record in order to

determine if the evidence supporting the agency's decision is substantial, taking 'into account

whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37

---

    [3] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

F.3d 1437, 1439 (10th Cir. 1994)).  The court "may neither reweigh the evidence nor substitute"

its opinion for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (quotation omitted).

### III.  MEDICAL HISTORY

Plaintiff alleges a disability beginning January 15, 2008, due to problems with her knees,

left hip, left wrist, and right shoulder. [Tr. 176.]  The Plaintiff reported to Social Security that

she stopped working because she "can't lift heavy objects, [and] too much walking causes pain

in my hip and knee." [Tr. 176.]

#### A.      Acoma-Canoncito-Laguna Hospital

Plaintiff was seen on May 8, 2007 at the Acoma-Canoncito Laguna Hospital with a

complaint of chronic back pain. [Tr. 222.] She was noted to be "obviously antalgic." [Id.] X-rays

showed no evidence of fractures, malalignments, or disc space abnormalities. [Tr. 225.] There

was very minimal lower T-spine degenerative disease manifested by very small spurs. [Id.]

Plaintiff was prescribed Celebrex. [Tr. 224.]

#### B.      First Nations Community Healthsource

Plaintiff was seen at First Nations Community Healthsource twelve times from July 24,

2007, through January 4, 2010, for her complaints and treatment of knee pain, left hip pain,

asthma, diabetes mellitus II, depression, anxiety and panic attacks.[4]   [Tr. 233-37, 246, 326, 335-

340.].  During the course of these visits, Plaintiff was also diagnosed with hyperlipidemia and

obesity. [Tr. 235.]

Plaintiff first reported right knee pain on July 24, 2007, after she had fallen on her right

knee when she misstepped while walking. [Tr. 237.]  Physical exam revealed some swelling and

_____

[4]  The Administrative Record also includes records from First Nations Community Healthsource when
Plaintiff presented with complaints of cold and flu-like symptoms.

pain and Plaintiff was prescribed ibuprofen.  [Tr. 237.]  On February 1, 2008, Plaintiff returned

to First Nations complaining that she had hip pain for approximately four months. [Tr. 236.]

Physical exam showed decreased range of motion and mild pain to palpation. [Id.] Plaintiff was

prescribed ibuprofen. [Id.]  On February 4, 2008, the physician's note  indicates that radiology

showed no fractures to either Plaintiff's right knee or left hip. [Tr. 235.] Plaintiff reported on that

date that her knee and hip pain were not getting any worse and that ibuprofen was helping. [Id.]

Plaintiff was routinely prescribed Albuterol and Advair to treat her asthma, Metformin to

treat her diabetes, and Simvastatin to treat her hyperlipidemia.  Plaintiff was prescribed

Fluoxetine on January 4, 2010, when she first complained of depression, anxiety and panic

attacks. [Tr. 335.]

### C.    UNM Health Sciences Center

On July 14, 2008, Plaintiff was first seen by Family Practice Physician Brian Johnson,

M.D., at UNM Health Sciences Center. [Tr. 265.] She presented with complaints of ear drainage,

right knee pain, left hip pain and right shoulder pain. [Id.] Physical exam was remarkable for hip

pain with internal rotation as well as decreased range of motion. [Id.] Dr. Johnson also noted

there was some pain to palpation of Plaintiff's left knee and crepitus over the joint line, but that

there was no swelling. [Id.] Dr. Johnson assessed a possible osseous abnormality in Plaintiff's

right knee, but the left hip pain was likely secondary to osteoarthritis from her significant weight.

[Id.] Dr. Johnson ordered x-rays of both. [Id.]

On November 17, 2008, Plaintiff returned to Dr. Johnson complaining of back pain she

experienced after doing some heavy lifting. [Tr. 263.] Physical exam showed some paraspinal

muscle tenderness, but that Plaintiff had normal 5 out of 5 lower extremity strength at the knees

and hips bilaterally with normal sensation. [Id.] Dr. Johnson prescribed Baclofen and ibuprofen

for Plaintiff's back pain, and arranged for Plaintiff to attend a "back to fitness" program. [Id.]

Dr. Johnson also reordered x-rays for Plaintiff's right knee and left hip because Plaintiff reported

she had not followed up with x-rays after her July 14 appointment.

On January 30, 2009, radiologic exams ordered by Dr. Johnson revealed no findings to

explain Plaintiff's left hip pain, and mild early osteoarthrosis of the right knee. [Tr. 303, 305.]

On February 13, 2009, the result of the x-rays were discussed with the Plaintiff. [Tr. 294.]

Dr. Johnson recommended that Plaintiff lose weight and take Tylenol as needed for pain. [Id.]

He also referred Plaintiff to the "back to fitness" program. [Id.] Dr. Johnson indicated that he

anticipated Plaintiff's knee and back pain would be better within a month. [Id.]

On February 16, 2009, Plaintiff followed up with the "back to fitness" program. [Tr. 297-

302.] However, she participated in only three classes, canceled twice, show up late for one class

and was a no-show for one class. [Id.] Plaintiff was discharged from the program on March 16,

2009.

On March 13, 2009, Plaintiff saw Dr. Johnson complaining of paraspinous muscle

spasms and ongoing right shoulder pain. [Tr. 291.] Physical exam revealed some paraspinous

muscle spasm. [Id.] Palpation of the right shoulder showed some point tenderness with full range

of motion, although active and passive motion were with some pain. [Id.] Plaintiff was given

four trigger point steroid injections for her muscle spasm, and Dr. Johnson ordered x-rays of

Plaintiff's right shoulder.

Plaintiff was seen by CFNP Emily Griffin at UNM Health Sciences Center on July 31,

2009, September 10, 2009, and December 21, 2009. [Tr. 319, 347, 349.] These visits were for

left shin and back pain, a diabetes evaluation, and left elbow pain. [Id.] At these respective visits,

Plaintiff was told to use ibuprofen and elevate her leg to relieve shin pain, and she was treated

with steroid injections for her back pain; Plaintiff was screened for diabetes and obesity and educated about eating a healthy diet and weight loss; and CFNP Griffin ordered an x-ray of Plaintiff's left elbow which revealed an "ossicle in the coronoid process which may be from previous injury or stress response."  That aside, there was no fracture or dislocation, no joint effusion, and no significant degenerative changes.  [Tr. 319, 347, 352.]

**D.       X-Ray Associates of New Mexico**

On February 13, 2009, Plaintiff was referred to X-Ray Associates of New Mexico by State agency medical consultant Dr. David Green. [Tr. 271.] The x-rays were negative for any hip findings, and revealed mild tricompartmental knee osteoarthritis bilaterally. [Id.]

**E.       Physical Residual Functional Capacity Assessment - Dr. N. D. Nickerson**

On March 4, 2009, N. D. Nickerson prepared a Physical Residual Functional Capacity Assessment based on his review of Plaintiff's medical records. [Tr. 273-280.]  Dr. Nickerson commented as follows:

> Records received show the claimant has been seen for ongoing knee pain.  She was seen on 2/1/2008 due to left hip and right knee pain of several months duration after a fall.  Physical examination noted decreased ROM in the left hip and a normal knee exam.  Imaging obtained February 2009 revealed mild tricompartmental DJD in bilateral knees.  Hips were negative bilaterally.  Claimant weight 229 pounds with a height of 61" for BMI of 43.3.

> Imaging of the thoracic and lumbar spines on file show mild convex thoracolumbar scoliosis without any other abnormalities.  The lumbar spine showed early disc degenerative disease at L4-5.  Cervical spine showed no fractures, malalignments, or disc space abnormalities.  Claimant presented in November 2008 for follow up on the pain in right knee and left hip.  She also reported some lower back pain secondary to heavy lifting she had performed the week before.  Examination showed no bony tenderness or abnormality in the spine.  There was some paraspinal tenderness in the thoracic and lumbar regions.  She had normal 5/5 strength at the knees and hips bilaterally with normal bilateral sensation.

> It appears that the claimant is minimally limited by impairments of obesity and mild DJD in both knees, and that it appears reasonable to propose the capability to sustain work at a medium level of exertion.

[Tr. 274-75.]  Dr. Nickerson assessed that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and/or pull unlimited. [Tr. 274.] Dr. Nickerson found no postural, manipulative, visual, communicative, or environmental limitation. [Tr. 275-277.]

## F.  **Albuquerque Indian Health Care**

Plaintiff was seen at Albuquerque Indian Health Care for evaluation of her hearing loss and glaucoma. [Tr. 331, 328.] On October 15, 2009, Plaintiff underwent an audiology exam which revealed "bilateral sensory hearing loss, mild to moderate in the right, mild in the left." [Tr. 331.] Plaintiff expressed her interest in a hearing aid. [Id.] On November 27, 2009, Plaintiff underwent an optometry exam which revealed glaucoma in both eyes. [Tr. 329.] Plaintiff was advised to continue the use of Travatan drops. [Id.]

## ANALYSIS

Plaintiff asks this Court to address three issues on review.  First, that the ALJ's finding that Plaintiff has the ability to perform the mental and physical requirements of light work is contrary to the evidence and the law.  Second, that the ALJ failed to properly consider Plaintiff's obesity.  And third, that the ALJ's credibility determination is contrary to law.

**Step Four Findings**

  **A.**  **Residual Functional Capacity To Do Light Work**

  Plaintiff first argues that the ALJ's finding that Plaintiff has a residual functional capacity to perform light work is unsupported by the evidence and contrary to law because the Plaintiff has exertional limitations that preclude light work and the ALJ minimized findings regarding Plaintiff's mental limitations and failed to develop the record in this regard. [Doc. 18 at 11-15.] In support of her argument, Plaintiff points to a number of findings in the record that are relevant to Plaintiff's ability to walk and/or stand, and her ability to reach and lift. [Id.] Plaintiff further argues that because there are references to Plaintiff's depression and anxiety/panic attacks in the record, the ALJ had a duty to develop the record and should have ordered a consultative exam. [Id.]

  The Defendant contends that the overall record, along with Plaintiff's degree of activity, fails to demonstrate a condition or combination of conditions that would preclude the performance of a limited range of light work. [Tr. 19 at 9.] Defendant further contends that the scant history of Plaintiff's depression supports the ALJ's finding of no severe impairment and no more than mild limitation in mental functioning. [Id. at 10.]

  **1.**  **ALJ's RFC Assessment**

  In determining a claimant's physical abilities, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1545(d) , 416.945; *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "[T]he ALJ must make specific [RFC] findings."

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). And those findings "must be supported

by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The RFC

assessment must include a narrative discussion as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual case perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistences or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ's analysis meets these standards. In making her RFC determination, the

ALJ considered all of the claimant's physical impairments, including impairments that are not

severe, and made specific findings for each that were supported by substantial evidence.[5] The

ALJ provided a narrative discussion describing how the evidence supports her conclusions, and

cited to specific medical facts as well as nonmedical evidence. As such, Plaintiff's argument

that the ALJ's finding that Plaintiff has a residual functional capacity to perform light work is

unsupported by the evidence fails.

While Plaintiff points to several pieces of evidence to support her argument regarding her

limitations with respect to walking, standing, lifting and reaching, this Court finds that the ALJ

---

[5] The ALJ also considered the Plaintiff's mental impairments as discussed in Section 2 below.

11

fully addressed the subjective and objective evidence in determining Plaintiff's RFC to do light work.  For example, Plaintiff points to her May 2007 x-ray for chronic back pain and argues that the "[x]-rays revealed scoliosis of the thoracic spine and early degenerative disc disease at L4-5." [Doc. 18 at 12.]   However, the ALJ discusses this finding and correctly states that the x-ray reveals that Plaintiff's scoliosis is *mild* and she has "*very minimal* lower T-spine degenerative disease." [Tr. 225.] (Emphasis added.)  The ALJ also correctly notes that this x-ray shows no evidence of fractures, malalignments, or disc space abnormalities. [Id.] In addition, this Court's review of the record fails to reveal any limitations resulting from Plaintiff's scoliosis.

The next record addressing Plaintiff's back pain wasn't until November 2008 at which time she reported back pain after doing some heavy lifting. [Tr. 263.]  Plaintiff subsequently received trigger point steroid injections for muscle spasms in her back and right shoulder in March 2009 and July 2009, which she stated were helpful. [Tr. 291, 319.] Other than these injections, Plaintiff's back pain was routinely treated with ibuprofen.  In March 2009, Dr. Johnson ordered an x-ray of Plaintiff's right shoulder, but the record does not contain any radiologic studies for Plaintiff's right shoulder.  Nonetheless, the ALJ specifically accounted for Plaintiff's right shoulder pain and stated that "[a]lthough the diagnosis of osteoarthritis of the right shoulder was never actually established, I find that claimant's right shoulder condition precludes the claimant from lifting and carrying more than 20 pounds occasionally and 10 pounds frequently and from performing more than frequent reaching with her right, dominant upper extremity." [Tr. 27.]   The ALJ added that:

> . . . [T]here is no evidence of involvement of one major peripheral joint in each
> upper extremity, since only the right upper extremity is affected. . . . [T]here is no
> evidence that the claimant's condition has resulted in inability to perform fine and
> gross movements effectively[.] . . .There is no evidence that the claimant has had

an extreme loss of function that interferes very seriously with her ability to
independently initiate, sustain, or complete activities.

[Tr. 24.]   Finally, the ALJ acknowledged Plaintiff's subjective testimony that her shoulder hurts

when she picks up *heavy* things.  The ALJ accommodated this by limiting Plaintiff's ability to

lift to 20 pounds occasionally and 10 pounds frequently. [Tr. 25.]

In addressing Plaintiff's knee and hip pain, the ALJ indicated that despite Plaintiff's

subjective complaints, radiologic studies showed Plaintiff's hips were repeatedly negative and

that Plaintiff had  *mild* bilateral osteoarthritis of the knees. [Tr. 22, 271, 303, 305.]  The ALJ also

stated that:

> There is no evidence that the claimant is unable to sustain a reasonable walking pace
> over a sufficient distance to be able to carry out activities of daily living.  The
> claimant admitted at the hearing that she does a lot of walking and that she is able
> to walk one-half mile to one mile and that she only sometimes has to sit down. . . .
> The record as a whole shows that the claimant is able to carry out routine ambulatory
> activities such as shopping without any problems; in fact, the claimant admitted that
> her primary means of getting around is by walking.

[Tr. 24.]

The ALJ also considered Plaintiff's left wrist pain, left elbow pain, and asthma.  The ALJ

indicated that the records are silent regarding Plaintiff's left wrist pain and there is no evidence

of any abnormalities of the left wrist. [Tr. 22.]  Other than Plaintiff's subjective testimony in her

Function Report, this Court's review of the record did not find any evidence regarding Plaintiff's

left wrist pain.  The ALJ discussed the radiology report regarding Plaintiff's left elbow.  Based

on those findings, the ALJ determined that "there is no evidence that this condition is more than

a slight abnormality or that it has resulted in more than minimal functional limitations." [Tr. 22.]

With respect to Plaintiff's asthma, the ALJ noted that the records indicate Plaintiff's asthma was

under control with the use of an inhaler and nebulizer and only exacerbated when Plaintiff has

either gotten sick with an upper respiratory infection or when she is not taking her medication. [Tr. 23.]

The records note that Plaintiff reported shin and calf pain only one time on July 31, 2009. [Tr. 319.]  While the record indicates that this pain was aggravated by walking, Plaintiff stated she nonetheless "does a lot of walking throughout the day." [Id.]  Plaintiff was advised to take ibuprofen and elevate her leg until it resolved. [Id.] There is no further mention of this condition in the record.

Finally, the ALJ states that she considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. ]Tr. 26.]  State agency medical consultant Dr. N. D. Nickerson assessed that "the claimant is minimally limited by impairments of obesity and mild DJD in both knees, and it appears reasonable to propose the capability to sustain work at a *medium* level of exertion." [Tr. 275.] (Emphasis added.)

For these reasons, the Court finds that the ALJ considered all of the claimant's physical impairments, including impairments that are not severe, and made specific findings for each that were supported by substantial evidence.

## 2.      Mental Impairments and Duty to Develop the Record

Plaintiff's argument that the ALJ's finding that Plaintiff has a residual functional capacity to perform light work is unsupported by the evidence because she minimized findings regarding Plaintiff's mental limitations and failed to develop the record also fails.  In disability proceedings, the Social Security Administration bears a duty to develop the record.  *Wall v. Astrue*, 561 F.3d 1048, 1062-63 (10th Cir. 2009).  But to trigger this duty, the claimant must raise the issue to be developed and that issue must be substantial on its face.  *Id.* at 1063.  As a result, the claimant must ensure that the record contains evidence suggesting a reasonable possibility of

a severe impairment.  *Id.*  In deciding whether the record is sufficient, the Court must consider

whether objective evidence suggests a condition which could materially affect the disability

decision and require further investigation.  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (120th Cir.

1997).

Here, the ALJ did not violate the duty to develop the record on mental impairments

because (1) she could reasonably assume that mental impairments would not bear on the

disability claim, and (2) the isolated record references to depression, and anxiety/panic attacks

would not have triggered a duty to further develop the record on these problems.  First, Plaintiff

did not claim an inability to work because of mental impairments.  Plaintiff specifically listed

only physical impairments, *i.e.*, problems with her knees, her left hip, left wrist, and right

shoulder. [Tr. 176.]   Second, aside from Plaintiff's testimony at the hearing about her depression

and anxiety/panic attacks, the record contains only two brief references to mental symptoms.[6]

Third, the ALJ discussed Plaintiff's testimony and the objective findings regarding her alleged

mental impairments and determined there was "scant objective findings or treatment records to

support the claimant's allegations of significant mental limitations." [Tr. 23-24.]  The ALJ

further determined that Plaintiff had only a mild degree of limitations in her activities of daily

---

[6]  While Plaintiff argues that the First Nations Clinic notes depression as early as April 2008, this Court finds that argument debatable.  There is no indication of depression in any physician note before August 6, 2009, wherein Plaintiff reported she has "depression off and on." [Tr. 326.] It was not until January 4, 2010, that Plaintiff again reported depression, and for the first time indicated she was having anxiety/panic attacks.  Plaintiff was prescribed Fluoxetine at that time.  In addition, there are three "Problem List(s)" included with three sets of records from First Nations Community Healthsource, only one of which indicates depression.  The first Problem List was included with records from First Nations that were requested by the Administration on July 14, 2009.  This Problem List *does not* list or describe depression as a problem, nor does it indicate Fluoxetine as one of Plaintiff's medications.  [Tr. 312.] The second Problem List was included with records from First Nations that were provided by counsel dated August 6, 2009.  The second Problem List likewise *does not* list or describe depression as a problem, nor does it indicate Fluoxetine as one of Plaintiff's medications. [Tr. 324.] The third Problem List was included with records from First Nations provided by counsel dated September 2, 2009, through January 4, 2010. This Problem List now lists depression as a problem and Fluoxetine as a medication.  [Tr. 334.] This third Problem List corresponds to the January 4, 2010, record that indicates Plaintiff was prescribed Fluoxetine for depression.

living, in maintaining social functions, and in maintaining concentration, persistence or pace. Given the ALJ's discussion regarding her findings, coupled with the isolated references to Plaintiff's depression and anxiety/panic attacks, the record does not suggest a reasonable possibility of impairment and is insufficient to trigger the agency's duty to further develop the record.

For these reasons, the Court finds that the ALJ considered all of the claimant's mental impairments and made specific findings that were supported by substantial evidence. The Court also find that the ALJ did not violate the duty to develop the record regarding Plaintiff's mental impairments.

### B.    Plaintiff's Obesity

Plaintiff next argues that the ALJ's obesity analysis is incomplete and is contrary to substantial evidence. [Tr. 18 at 16.] Plaintiff also contends that the ALJ erred by failing to develop the record regarding the impact of Plaintiff's obesity on her physical abilities. Defendant asserts that the ALJ considered the effects of Plaintiff's obesity in accordance with Social Security Ruling 02-1p.

Social Security Ruling 02-1p provides as follows:

Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea. The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

SSR 02-1p.

Here, the ALJ found obesity to be a severe impairment at step two and determined there was no evidence that Plaintiff's obesity increased the severity of the claimant's osteoarthritis of the knee to such a degree that her knee condition meets or medically equals Listing Section 1.02A. [Tr. 21, 24.] In making her RFC findings, the ALJ considered the effects of the Plaintiff's obesity as follows:

> I have also considered the effects of the claimant's obesity, pursuant to Social Security Ruling 02-1p. As of August 6, 2009, the claimant weighed 244 pounds and was 61 inches tall, resulting in a body mass index (BMI) of 46.1. The record does not show that the claimant's obesity has exacerbated the effects of her arthritis to such a degree that the combined effects of these conditions would preclude her from performing a limited range of light work.

[Tr. 27.] The ALJ also discussed Plaintiff's testimony that she gets around primarily by walking and can walk up to one mile before she needs to sit down. [Tr. 28.] The ALJ stated that the record as a whole established that the Plaintiff can sit and stand and/or walk six hours total out of an eight-hour workday and up to 30 minutes at one time. On these facts, the Court finds no clear error by the ALJ in her consideration of Plaintiff's obesity.

With respect to the ALJ's duty to develop the record regarding Plaintiff's obesity, the Tenth Circuit has explained that duty as follows:

> It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997); 20 C.F.R.

§ 404.1512(a) ("[Y]ou must bring to our attention everything that shows that you are ... disabled."). Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.' " *Hawkins*, 113 F.3d at 1164 (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)); 20 C.F.R. § 404.944 (requiring the ALJ to "look[ ] fully into the issues"). Generally, this means that the "ALJ has the duty to ... obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing ." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.1996). Moreover, the ALJ's "duty is heightened" when a claimant appears before the ALJ without counsel. *Henrie*, 13 F.3d at 361; *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992) (same); see also *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir.1987) ("The [ALJ's] duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel.").

*Madrid v. Barnhart,* 447 F.3d 788, 790 (10th Cir.2006). However, the duty to develop the record consistent with the issues raised "is not a panacea for claimants ... which requires reversal in any matter where the ALJ fails to exhaust every potential" line of inquiry. *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir.1994).

   In this case, Plaintiff was represented before the ALJ by counsel, and it was her burden to prove that she has exertional limitations and that her obesity causes more than minimal vocational limitations. Plaintiff fails to point to any evidence in the record indicating that her obesity has resulted in limitations not considered in the ALJ's assessment. Moreover, she cites no authority for the proposition that the mere presence of obesity requires finding more than minimal vocational limitations caused thereby. Rather, Plaintiff appears to argue that the mere presence of obesity requires finding that it causes more than minimal vocational limitations, and that if the ALJ does not draw the necessary inferences, she must develop the record. Plaintiff has shown no error in the ALJ's failing to develop the record regarding Plaintiff's obesity.

C.      <u>Credibility</u>

Finally, the Plaintiff argues that the ALJ failed to assess Plaintiff's complaints of pain properly.  Plaintiff argues that the Plaintiff has met the requirements under the Tenth Circuit's ruling in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987),[7] because she has produced evidence of a pain-producing impairment, and has shown a nexus between the impairment and her allegations of pain.  [Doc. 18 at 18.]  Plaintiff contends that the ALJ's reliance on Plaintiff's daily activities and missed appointments to find her not credible was error. [Id.]

In response, Defendant argues that the ALJ discussed Plaintiff's subjective statements and considering Plaintiff's medical treatment history, the reported medical findings of record, the results of diagnostic testing, and Plaintiff's reported activities of daily living in evaluating Plaintiff's credibility. [Doc. 19 at 12.]  Defendant also contends that objective findings are inconsistent with the existence of disabling pain, and that Plaintiff required no more than conservative care for her alleged painful impairments. [Id. at 13.]

In making her RFC determination here, the ALJ considered each of the Plaintiff's severe impairments – tricompartmental osteoarthrosis of the bilateral knees, chronic right shoulder pain, and obesity.  However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] alleged symptoms are not credible *to the extent they are inconsistent* with the above residual functional capacity assessment." (Emphasis added.)  This Court has previously stated that a troubling first impression of this statement, if taken at face

---

[7] The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.  *Luna v. Bowen*, 834 F.2d 151, 163-64 (10th Cir. 1984).

value, is that the ALJ appears to be putting the cart before the horse.  A RFC determination is made *after* the ALJ considers each of the Plaintiff's severe and nonsevere impairments; an ALJ does not make an RFC determination and then conclude that a claimant's alleged symptoms of those impairments are inconsistent with a determination already made, as the ALJ appears to be doing here.

That aside, the ALJ here cited to specific evidence relevant to the factors she used in evaluating a claimant's subjective complaints, and explained why she concluded those complaints were not credible.  "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence . . . ."  *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) (*quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).  "Credibility determinations are peculiarly the province of the finder of fact, [however,] and we will not upset such determinations when supported by substantial evidence."  *Id. (quoting Diaz v. Secretary of Health & Human Servs*., 898 F.2d 774, 777 (10th Cir. 1990)).  "A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain."  *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) (internal citations omitted).  Here, the Plaintiff met this initial burden.  In this case, there is objective medical evidence in the administrative record establishing that Plaintiff has pain-producing tricompartmental osteoarthrosis of the bilateral knees and chronic right shoulder pain. The ALJ is then required to consider all the relevant objective and subjective evidence and "decide whether he believe[d] the claimant's assertions of severe pain."  *Id.* (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).  The ALJ must cite to specific evidence relevant to

the factors used in evaluating a claimant's subjective complaints, and explain why if she

concludes those complaints are not credible. *See Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.

1995).

When determining the credibility of pain testimony, the ALJ should consider such factors

as:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts
> (medical or nonmedical) to obtain relief, the frequency of medical contacts, the
> nature of daily activities, subjective measures of credibility that are peculiarly within
> the judgment of the ALJ, the motivation of and relationship between claimant and
> other witnesses, and the consistency or compatibility of nonmedical testimony with
> objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482. 1489 (10th Cir. 1993) (citing *Hargis v. Sullivan*, 945 F.2d

1482, 1489 (10th Cir. 1991) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 and n. 7 (10th cir.

1988)).

Here, the Court finds that the ALJ considered all the relevant objective and subjective

evidence to decide whether she believed the Plaintiff's assertions of severe pain.  "Credibility

determinations are peculiarly the province of the finder of fact, [however,] and we will not upset

such determinations when supported by substantial evidence."  *Id. (quoting Diaz v. Secretary of

Health & Human Servs*., 898 F.2d 774, 777 (10th Cir. 1990)).  The ALJ cited to specific evidence

in evaluating Plaintiff's subjective complaints and explained why she found those complaints not

credible.  For example, the ALJ discussed the negative radiologic findings regarding Plaintiff's

hip pain, the radiologic evidence of only early degenerative disc disease in Plaintiff's back, the

radiologic findings of mild tricompartmental knee osteoarthritis bilaterally, and that Plaintiff had

normal 5 out of 5 lower extremity strength in the knees and hips bilaterally.  [Tr. 22, 27.] The

ALJ noted that Plaintiff received conservative care of for her alleged pain. [Tr. 22.]    The ALJ

discussed Plaintiff's testimony that she does a lot of walking every day, and she walks one-half to one mile before she has to sit down.  [Tr. 25] The ALJ pointed out that Plaintiff testified she can lift up to five or ten pounds.  [Id.] The ALJ also discussed Plaintiff's daily activities as reported by the Plaintiff in her Function Report and testified to at her hearing. [Tr. 24, 28.]

Plaintiff's argument that the ALJ relied solely on Plaintiff's daily activities and missed appointments in making her credibility assessment is misplaced.  First, as discussed above, this Court agrees with the Defendant that the ALJ considered Plaintiff's subjective statements, Plaintiff's medical treatment history, the reported medical findings of record, the results of diagnostic testing, and Plaintiff's reported activities of daily living in evaluating Plaintiff's credibility.  In addition, this Court's review of the record did not uncover any evidence not considered by the ALJ.  Second, Tenth Circuit case law states that an ALJ should consider the extensiveness of the attempts (medical or nonmedical) to obtain relief and the nature of daily activities as factors in determining a claimant's credibility.  *See Thompson v. Sullivan*, 987 F.2d 1482. 1489 (10th Cir. 1993) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 and n. 7 (10th cir. 1988)). To do otherwise would render her analysis incomplete.

The Court finds that the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence.

For all of the foregoing reasons, this Court finds that the ALJ's determination was supported by substantial evidence and the correct legal standards were applied.

## <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision [Doc. 18] is **DENIED**.


_____
**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**